53 So.2d 802

**STATE v. MATHE.**

No. 40145.

May 28, 1951.

Rehearing Denied June 29, 1951.

R. A. Dowling, New Orleans, for appellant.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., for appellee.

LE BLANC, Justice.

The defendant, Henri Mathe, was charged by an affidavit on March 1, 1950 with having on the 24th day of February 1950 violated Article 81 of the Louisiana Criminal Code, now incorporated in the Revised Statutes in 1950, LSA–RS 14:81, relative to indecent behavior with juveniles. He was formally arraigned on March 13, 1950 in the Juvenile Court, Parish of Orleans, and his case fixed for trial on April 19, 1950. On that day he was granted a continuance until May 24, 1950, when, at the request of his counsel, the case was again continued until the following day. It was heard on May 25, 1950 and after considering the evidence the trial judge found the defendant guilty. On May 31, 1950 he was sentenced to serve one year in the parish prison. From his conviction and sentence he took this appeal.

Before he was sentenced, a motion for a new trial was filed on behalf of the defendant and overruled. In this motion it was urged that newly discovered evidence had been obtained on the afternoon of May 29, 1950 and that the introduction of such evidence was so material that it would produce a different result from the one that had been reached by the trial judge. Further it was urged that the decision of the case without having afforded the accused the opportunity to locate two important defense witnesses whose presence he had been unable to obtain, and with regard to whose testimony the Court had agreed to hold the case open, should it be necessary to use it, was prejudicial and therefore a new trial should be granted. In this motion the defendant also alleges that regular bills of exception were reserved during the proceedings showing errors committed, to his prejudice.

After the motion for a new trial had been overruled defendant filed a motion in arrest of judgment which was also overruled by the trial judge.

From the record it appears that after testimony on behalf of the defendant had been closed, his counsel asked for a delay of ten days in order to produce the two witnesses referred to in his motion for a new trial. From the information given the trial judge as to their whereabouts it appeared very improbable that their presence could be procured at any future time and he accordingly refused to let the case

remain open. There was no exception taken to the ruling of the trial judge on this request nor on the ruling on the motion for a new trial. As a matter of fact there were no exceptions taken at any time during the trial of the case nor after, on either the motion for a new trial or on the motion in arrest of judgment. Assuming that the statement which appears in the motion for a new trial that regular bills of exception were reserved during the proceedings is correct, no such bills were perfected, and as appears from counsel's brief before this Court he seems to rely entirely on certain so called assignments of error for a reversal of the judgment of conviction. Since no bills were perfected the only errors we are here concerned with are those, if any, that are patent on the face of the record. Article 499, 542 and 545, Code of Criminal Law and Procedure, LSA–RS 15:499, 15:542, 15:545; State v. Owens, 210 La. 808, 28 So.2d 337 and State v. Cummings, 217 La. 672, 47 So. 2d 41.

■ In his first assignment of error counsel urges that the trial judge was without jurisdiction to try an adult for an offense carrying with it a prison term "at hard labor, such as the parish prison of Orleans Parish, without the intervention of a jury." A request for a trial by a jury had been made to the trial judge and denied for the reason, as stated by him, that this prosecution was one merely for a misdemeanor. Counsel does not seem to contend the accused is entitled to a trial by a jury for any other reason than because the offense was one carrying with it a prison term at hard labor which, of course, is incorrect as conviction under such an offense carries a maximum penalty of a fine of $500.00 or imprisonment not exceeding one year, or both.

The next assignment of error is with regard to the evidence on which the accused was convicted. In this respect it is stated that there is no evidence whatever of a legal nature to justify a verdict of guilty, nor did the State, as is required by law, prove the defendant guilty "beyond a reasonable doubt."

■ This contention might be entitled to this Court's consideration were it not for the amendment to Section 96 of Article 7 of the State Constitution which was adopted in November of 1948 and which prescribes that in cases of this character, the appeal which lies to this Court "shall lie on questions of law alone." After providing that appeals from final judgments rendered by the Juvenile Court, Parish of Orleans, shall be taken to this Court, the amendment then prescribes that they shall lie on questions of law and fact when the judgment appealed from affects the custody, care or control of children under 17 years of age and also in adoption proceedings; but it is then provided that "In all other cases an appeal shall lie on questions of law alone." This case does not involve the custody, care or control of a

child under 17 nor is it an adoption proceeding and therefore it is included in the class of all other cases where the facts are concluded by the findings of the trial court and only questions of law can be considered on appeal.

This brings us to the final assignment of error which is really the only one demanding serious consideration. Under it, it is contended that Article 81 of the Louisiana Criminal Code, under which defendant was charged, was repealed by Section 2 of the Louisiana Revised Statutes of 1950 and that since that Act contains no savings clause, it acted as a legislative pardon for all offenses committed before and not tried prior to its effective date of May 1, 1950.

The revised Statutes of 1950 of this State were adopted by Act 2 of the First Extra Session of the Legislature for that year. The matter of revising the statutes of Louisiana was committed to the Louisiana State Law Institute by Act 42 of 1942. By the terms of that Act, the Institute was instructed "to prepare a comprehensive revision of the statutes of the State of a general character, including those contained within the revision of 1870, to simplify their language, to correct their incongruities, to supply their deficiencies, to arrange them in order, the sections thereof being numbered so as to provide for additions and amendments, and to reduce them to one connected text with a view to their adoption, in accordance with the provisions of Section 24 of Article III

of the Constitution of the State of Louisiana, as the Revised Statutes of the State." With this important task consigned to it the Louisiana State Law Institute labored earnestly and diligently for more than seven years and on December 27, 1949 transmitted its projet of the statutes to the Governor of the State. On January 2, 1950 the projet was submitted by the Governor to the State Legislature in a special session called for the limited purpose of accepting or rejecting it. The projet consisted of five volumes, and upon its submission to the Legislature, an Act which became Act No. 2 of the Extra Session was introduced. The title of that Act reads as follows: "To revise the laws of the State of Louisiana of a general or public nature and to consolidate them into a system of laws to be known as the Louisiana Revised Statutes of 1950; to enact the necessary legislation in connection therewith; to provide for the continuous revision of the laws; and to repeal certain enumerated statutes."

Section 1, which is the enacting clause reads: "Be It Enacted By The Legislature Of Louisiana, That the Louisiana Revised Statutes of 1950 as hereinafter set forth are hereby adopted and enacted into law:"

This clause is followed by the material comprised in the five volumes of the projet at the end of which appears Section 2 of the Act which provides that "The statutes that are revised and consolidated herein, and without limiting or being lim-

ited by the foregoing, the following statutes, including all amendments and re-enactments thereof, are hereby repealed:" and among those that are repealed specifically is Act 43 of 1942, which had constituted the Criminal Code of Louisiana. Upon adoption of the Act by the Legislature, the Revised Statutes as therein embodied became the law of the State. It is significant to note that, incorporated in the projet of the Revised Statutes, as adopted, under Title 14, is the entire Criminal Code as comprised in Act 43 of 1942. Therefore, there was no interruption in the existence of this Code as the re-adoption and re-enactment of all of its provisions came simultaneously with the repeal of the former Act under which it existed; the reaffirmance of the law as it existed had the effect of counteracting the repeal.

■ The rule of interpretation in matters of this kind is thus stated in 50 Am. Jur., Statutes, Sec. 555: "It is a general rule of law that where a statute is repealed and all, or some, of its provisions are at the same time re-enacted, the re-enactment is considered a reaffirmance of the old law, and a neutralization of the repeal, so that the provisions of the repealed act which are thus re-enacted continue in force without interruption, and all rights and liabilities incurred thereunder are preserved and may be enforced. Similarly, the rule of construction applicable to acts which revise and consolidate other acts is, that when the revised and consolidated act reenacts in the same or substantially the same terms the provisions of the act or acts so revised and consolidated, the revision and consolidation shall be taken to be a continuation of the former act or acts, although the former act or acts may be expressly repealed by the revised and consolidated act; and all rights and liabilities under the former act or acts are preserved and may be enforced. Some codes contain an express provision for the continuation of provisions contained in existing laws, as far as they are the same as those included in the code."

Significantly we find that our own Revised Statutes of 1950, as adopted by Act 2 of the Extra Session of that year, contains just such a provision as is referred to in the last part of the section just quoted. It is found in Title 1, Section 16, LSA-RS 1:16, which relates to the construction of the statutes as adopted and reads as follows: "The Louisiana Revised Statutes of 1950 shall be construed as continuations of and as substitutes for the laws or parts of laws which are revised and consolidated herein. The adoption of these Revised Statutes shall not affect the continued existence and operation, subject to the provisions hereof, of any department, agency, or office heretofore legally established or held, nor any acts done, any funds established, any rights acquired or

accruing, any taxes or other charges incurred or imposed, any penalties incurred or imposed, or any judicial proceedings had or commenced prior to the effective date of these Revised Statutes."

It is a universally recognized rule in the interpretation of statutes for the Court to look to the legislative will as it is said to be "the all important and controlling factor." Indeed, according to a statement in 50 Am.Jur., Statutes, Sec. 223, "the primary rule of construction of statutes is to ascertain and declare the intention of the Legislature, and carry such intention into effect to the fullest degree." To ascertain the intent of the Legislature of this State in adopting the Revised Statutes of 1950 we need go no further than to read again the language of the provisions just quoted from Section 16 of Title 1. Concerning the issue presented in this case, its intention could hardly have been more clearly expressed than that the Revised Statutes then being adopted were to govern from the day on which they became effective, that is May 1, 1950, but all judicial proceedings had or commenced prior to that date should continue in full force and effect. The provision operated as a general savings clause which protected the prosecution which had been initiated on March 1, 1950 in this case.

For the reasons assigned the conviction and sentence are hereby affirmed.